Richard S. Busch (SBN 319881)
*richard.busch@arlaw.com*
Mark L. Block (SBN 115457)
*mark.block@arlaw.com*
Andrew H. “Drew” Davis (pro hac vice forthcoming)
*drew.davis@arlaw.com*
David Niemierzycki (pro hac vice forthcoming)
*david.niemierzycki@arlaw.com*
ADAMS & REESE, LLP
1600 West End Blvd., Suite 1400
Nashville, TN 37203
Tel: (615) 259-1450
Fax: (615) 259-1470

Jeffrey E. Faucette (SBN 193066)
jeff@skaggsfaucette.com
Martin R. Glick (SBN 40187)
marty@skaggsfaucette.com
SKAGGS FAUCETTE LLP
505 Montgomery Street, 11th Floor
San Francisco CA 94111
Tel: (415) 874-3181
Fax: (888) 980- 6547

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROUND HILL MUSIC LP; ROUND HILL MUSIC ROYALTY FUND II, LP; ROUND HILL MUSIC ROYALTY FUND III, LP; ROUND HILL MUSIC ROYALTY FUND III PLUS, LP; GFP CO-INVEST, LP; and RH CARLIN HOLDINGS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SUNO, INC; BRIGHT DATA LTD.; and BRIGHT DATA, INC.,<br><br>Defendants. | Case Number: 5:26-cv-8507<br><br>**COMPLAINT FOR DIRECT COPYRIGHT INFRINGEMENT, CONTRIBUTORY INFRINGEMENT, CIRCUMVENTION OF PROTECTION MEASURES, AND REMOVAL OR ALTERATION OF CMI**<br><br>**DEMAND FOR JURY TRIAL** |

Round Hill Music LP, Round Hill Music Royalty Fund II, LP, Round Hill Music Royalty Fund III, LP, Round Hill Music Royalty Fund III Plus, LP, GFP Co-Invest, LP, and RH Carlin Holdings LLC (collectively "Round Hill") for its complaint against Defendants, Suno, Inc. ("Suno"), Bright Data Ltd., and Bright Data, Inc. (collectively, Bright Data, Ltd. and Bright Data, Inc. are referred to as "Bright Data") (collectively, Suno and Bright Data are referred to as "Defendants") alleges, on personal knowledge as to matters relating to itself, and on information and belief as to all other matters, as follows:

## I. NATURE OF THE CASE

1. Round Hill is an independent music publisher and record production company which owns or controls, in whole and in part, the exclusive rights to 14,364 valuable musical compositions and 16,873 sound recordings pursuant to its contracts with songwriters, artists, and other rights holders. It brings this action to enforce these exclusive rights against Defendant Suno, who has built its entire business model on copyright infringement at a scale never seen before, and Defendant Bright Data, who has knowingly and intentionally facilitated Suno's widespread illegal activities. Plaintiff Round Hill Music LP is the manager/administrator of the copyrights owned by the Plaintiff funds pursuant to written agreement.

2. Round Hill's catalog includes famous, evergreen hits across every genre with billions of streams between them including, *inter alia*, "Iris" and "Slide" performed by the Goo Goo Dolls; "Total Eclipse of the Heart" performed by Bonnie Tyler, "I Got You (I Feel Good)" performed by James Brown; "Got My Mind Set On You" as made famous by James Ray and George Harrison; "Bat Out of Hell" performed by Meatloaf; "My Own Worst Enemy" as performed by Lit; "Rudy A Message To You" as made famous by the Specials; "Good Lovin'" as performed by the Rascals; "Holy Diver" as performed by Dio; "The Revolution Will Not Be Televised" as performed by Gil Scott; "Lola" as performed by the Kinks; "Sweet Little Sister" as performed by Skid Row; and many more household names and titles. As an exemplar, Round Hill provides here a non-exhaustive list of 500 copyrighted musical compositions which Defendants have infringed, and which Round Hill owns 100 percent of the rights, or controls the U.S. copyrights to as an exclusive licensee, controls the U.S. copyrights, and that Defendant has infringed is attached hereto as **Exhibit A** (hereinafter the

"Works") which is provided to serve as a prioritized representative bellwether, as has been done in other similar copyright infringement cases in this Court. The Works contain some of the most iconic lyrics and music in history.

3. Suno, a Delaware Corporation with its principal place of business in Cambridge, Massachusetts, with additional offices in New York, Los Angeles, and San Francisco, has admitted to copying "essentially all music files of reasonable quality that are accessible on the open Internet" to train its AI music generator—a dataset of tens of millions of songs/recordings that, given its scope, necessarily includes Round Hill's copyrighted works. Indeed, according to publicly available sources, like *The Atlantic's* AI Watchdog (first published September 2025, expanded to music search tools in June 2026), confirms that many of the Works appear in data sets known to be used by AI companies in the training of AI models. Publicly available sources also confirm that Suno accessed these works from licensed streaming services (like Spotify, YouTube, SoundCloud) and paywalled platforms (*e.g.* Tidal) by scraping and circumventing technological access controls—in part through the use of tools and services supplied by Defendant Bright Data (as further defined below more specifically). Round Hill never authorized any Defendant to copy, reproduce, or otherwise use its copyrighted works for AI training or any other purpose.

4. Suno did so in a manner that completely disregards the rights of Round Hill by making unlicensed copies of their Works, as well as server copies, removing Copyright Management Information ("CMI"), and training the AI models themselves to ***<u>disregard</u>*** the CMI in both its training and output to conceal the infringement.

5. Suno took these copyrighted musical works and/or sound recordings embodying them and trained its AI model so that its users, which number over ten million, can create sound recordings based upon prompts. Suno operates on a "freemium" model allowing some free access, but charges users monthly subscription fees to fully use its platform, which produces AI-generated music files designed to mimic human-made songs.

6. Suno's users do not even have to write lyrics nor melodies. No, armed with the illicit copies of millions of copyrighted works – including Round Hill's – Suno's AI model can create an entire song, including the instrumentals, vocals, and entirely generated lyrics, all thanks to the training

on these unlicensed copies of the works in its library. That is, Suno made illicit copies of millions of copyrighted musical works, including Round Hill's – and then, without any remuneration to the rights holders – created a platform where anyone capable of paying $10 per month to create entire songs based entirely on these illicit copies. This is not speculation, Suno's Founder and CEO, Mikey Shulman gave an interview admitting, "One of the biggest challenges in modeling music is just that a three minute song has so many data points in it that it is really difficult for models to accurately capture all of the interesting stuff there. Our models are taught to just continue a piece of music. And with that, and a little bit of extra sauce for getting these things to start properly, we can go from an idea in somebody's head, to an entire three minute song very easily."[1] That is, while Suno advertises itself as a completely generative AI music creation service that generates songs from whole cloth, ***its own CEO*** admits that it has just trained its models to "continue a piece of music" – that is, the music that Suno and its agent, Bright Data, illegally scraped and copied to train its Model in disregard to the rights of the copyright holders to create unlicensed derivative works thereof.

7. Suno has materially enjoyed the fruits of others' labor closing its Series D in June 2026 raising over $400 million at a $5.4 ***billion*** valuation.[2]

8. Defendant Bright Data Ltd. is an Israeli company with its principal offices in Netanya, Israel. Upon information and belief, Bright Data Ltd. does business in the United States through its wholly-owned subsidiary, Bright Data, Inc. Bright Data (collectively) provides data-scraping, proxy-network, and dataset services sold to customers including AI developers, including, as relevant here for Suno. Bright Data develops, markets, and sells web-scraping infrastructure, residential and datacenter proxy networks, and pre-packaged datasets to business customers worldwide, including companies in this District and throughout the United States. Upon information and belief, Bright Data maintains offices and/or employs personnel in the United States, transacts continuous and systematic business in the United States, and has purposefully directed its scraping tools and services at copyrighted content hosted on U.S.-based platforms.

---

[1] "Suno Generates Beautiful Songs with Oracle Cloud". www.youtube.com/ watch?v=aKlIQiS8MLc

[2] Stassen, Murray, "Suno Raises Over $400 Million, Pushing Valuation to $5.4 Billion." Music Business Worldwide, <www.musicbusinessworldwide.com/ suno-raises-over-400-million-pushing-valuation-to-5-4-billion/> (last visited July 30, 2026).

9. Bright Data claims to be establishing the “standard for Ethical Web Data Collection.”[3] Indeed, in lawsuits against X (formerly Twitter) and Meta, Bright Data assured this Court previously that its suite of technologies are used only “to synthesize vast amounts of public data.” *See X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832, 839 (N.D. Cal. 2024) (finding no breach of X’s Terms of Service for scraping data therefrom); *Meta Platforms, Inc. v. Bright Data Ltd.*, 2024 WL 251406 (N.D. Cal. Jan. 23, 2024) (same, no breach of Meta’s Terms of Service). However, the aggregation of non-copyrighted public information is vastly different than the creation of millions of unlicensed copies of songs/masters in playable format and copyrighted lyrics to songs. Publicly available sources show that Suno, using proxy services it acquired from Bright Data, scraped “millions of songs and lyrics” from YouTube Music, Deezer, and Genius.[4]

10. That is, Bright Data provided services to Suno which are only good for copyright infringement – namely the making of unlicensed copies of songs and lyrics – including Round Hill’s Works – from licensed sources like YouTube, Deezer, and Genius. Indeed, Bright Data even advertises that its suite of products can use “puppets” to mimic human interface with websites and get around CAPTCHAs[5] and other blockers used to prevent this kind of data scraping, claiming it can provide “One API call. Any website. Zero blocks.”[6] Bright Data’s advertising admits that its services create unlicensed copies. It advertises that its services can create copies of “Separated audio tracks in m4a [file format], aligned to video timestamps. Ideal for ASR [Automatic Speech Recognition], audio-language models and multimodal training that needs the audio signal preserved.”[7]

11. While ironically calling these tools “100% ethical and compliant”[8] Bright Data is

---

[3] *See* Bright Data’s Trust Center: Leading Ethical Web Data Collection, <www.brightdata.com/trustcenter> (last visited July 30, 2026).

[4] Koebler, Jason, “Hack Reveals Suno AI Music Generator Scraped YouTube, Deezer, and Genius,” 404 Media, <www.404media.co/hack-reveals-suno-ai-music-generator-scraped-youtube-deezer-and-genius/> (last visited July 30, 2026)

[5] The “Completely Automated Public Turing test to tell Computers and Humans Apart” or CAPTCHA is a security test used by websites to determine whether a visitor is a human or a computer program (a ‘bot’).

[6] <www.brightdata.com/products/web-unlocker> (last visited July 30, 2026)

[7] <www.brightdata.com/ai/video-data> (last visited July 30, 2026)

[8] *Id.*

admitting that its services can be used to make copies of any song or video from the internet regardless of whether Bright Data or its users have a license to create said copies. Worse, publicly available sources have now confirmed that Suno used Bright Data's services to do just that. Public sources have identified files from Suno's training libraries include files like "youtube_music" which includes over two million music clips of approximately 113,879 hours – the equivalent of thirteen ***years*** – of music files scraped from YouTube.[9]

12. Bright Data's tools are specifically designed to scrape music files *en masse* and strip them of CMI and otherwise prepare them to train AI Models. These tools not only violate the Digital Millennium Copyright Act's anti-circumvention and anti-removal of CMI provisions, but also render Bright Data contributorily liable for Suno's copyright infringement.

13. Like the other Defendants, Bright Data has created enormous revenue by selling its tools to copyright infringers, enjoying 50% year-on-year revenue growth, surpassing $300 million in revenue in 2025 with a projected Annual Recurring Revenue projection of $400 million in 2026.[10]

## II. THE PARTIES

14. Plaintiff Round Hill Music LP is a Delaware Limited Partnership with its principal place of business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203. Round Hill Music, LP is the manager pursuant to written contract of the other Plaintiffs' funds and catalogs. Round Hill Music, LP has the exclusive right to license the Works and to initiate litigation on their behalf.

15. Round Hill Music Royalty Fund II, LP is a Delaware Limited Partnership with its principal place of business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203.

16. Round Hill Music Royalty Fund III, LP is a Delaware Limited Partnership with its principal place of business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203.

17. Round Hill Music Royalty Fund III Plus, LP is a Delaware Limited Partnership with its principal place of business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203.

18. GFP Co-Invest, LP is a Delaware Limited Partnership with its principal place of

---

[9] *See* note 4, *supra*.

[10] "Bright Data reaches $300m ARR amidst demand for web data" Asymmetrix. <www.asymmetrixintelligence.substack.com/p/bright-data-reaches-300m-arr-amidst> (last visited July 30, 2026)

business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203.

19. RH Carlin Holdings LLC is a Delaware Limited Liability Company with its principal place of business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203.

20. Each Work listed in Exhibit A constitutes an original work or copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and has been registered with the U.S. Copyright Office as evidenced by the registration numbers listed therein. The copyrights for each of the Works in Exhibit A remain valid and subsisting, and have been owned and/or controlled by Round Hill at all times relevant to the allegations in this Complaint.

21. Defendant Suno, Inc. is a Delaware corporation with its principal place of business at 17 Dunster Street, Cambridge, Massachusetts 02138. Suno develops, operates, and sells a generative AI music service that creates digital music based on user prompts. Suno charges users monthly subscription fees to use its platform, which produces AI-generated music files designed to mimic human-made songs.

22. Defendant Bright Data Ltd. is an Israeli company with its principal offices in Netanya, Israel, doing business in the United States through its data-scraping, proxy-network, and dataset services sold to customers including AI developers. Bright Data develops, markets, and sells web-scraping infrastructure, residential and datacenter proxy networks, and pre-packaged datasets to business customers worldwide, including companies in this District and throughout the United States. Upon information and belief, Bright Data maintains offices and/or employs personnel in the United States, transacts continuous and systematic business in the United States, and has purposefully directed its scraping tools and services at copyrighted content hosted on U.S.-based platforms.

23. Defendant Bright Data Inc., is a Delaware corporation with offices in Manhattan, New York, NY and in San Francisco, CA. Upon information and belief, Bright Data, Inc. is a wholly-owned subsidiary of Bright Data Ltd. through which Bright Data Ltd. conducts business in the United States.

## III. JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (copyright actions) because the claims alleged herein arise under the Copyright

Act of 1976, 17 U.S.C. §§ 101 *et seq.*, including the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205.

25. This Court has personal jurisdiction over Defendant Suno because Suno has transacted business in this District, including offering and selling its AI music generation service to customers in California via the Internet; because Suno's infringing conduct has been directed at and caused harm in this District; because the infringing conduct occurred in this District given Suno's use of Oracle Servers physically located in this District; because, on information and belief, it operates its business out of its offices located in this District; and because the exercise of personal jurisdiction over Suno comports with due process. Suno operates its business out of offices in Cambridge, Mass., New York, Los Angeles, and, more recently San Francisco. It has been reported that Suno opened its San Francisco office in late March 2026 in SoMa ("South of Market" area). S. Chen, *AI music generator Suno opens SF office* (April 3, 2026). According to that report, Suno's co-founder/CTO Georg Kucsko told Axios (via email) that opening doors in San Francisco "will be critical as we continue to scale" and that the company is "investing especially heavily in our machine learning team to develop our frontier music model").[11] Since that time, Suno has been actively recruiting employees to work in its San Franciso office. *See* E. Tanaka, "AI Song Factory Suno Sneaks Into SoMa as San Francisco Tech Beat Kicks Back In," *Hoodline* (April 3, 2026) (noting at that time, "Local job listings point to an active recruitment drive for engineers, product designers and machine learning researchers based in San Francisco").[12] According to that report, many of the roles offered on Indeed "list San Francisco as the required location and note that some positions will be on site." *Id.* As of August 2026, job openings on Indeed include Lead Machine Learning Data Operations, Senior Director of Customer Experience, Senior Corporate Recruiter, Senior Counsel, Director of Accounting, and others.[13] In addition, Suno uses Oracle servers "to train its proprietary machine learning models and support growing demand for its next generation of generative music models" Oracle, *AI Innovators Flock to*

---

[11] https://www.axios.com/local/san-francisco/2026/04/03/suno-ai-music-generator-startup-office-expansion

[12] https://hoodline.com/2026/04/ai-song-factory-suno-sneaks-into-soma-as-san-francisco-tech-beat-kicks-back-in/

[13] https://www.indeed.com/q-suno-l-san-francisco%2C-ca-jobs.html?vjk=34349af3bb314a9a

*Oracle to Address Some of the World's Most Pressing Challenges* (March 18, 2024). According to publicly available sources, Oracle's servers are located in Virginia, Illinois, Phoenix, San Jose, CA (Northern District), as well as Mexico and Canada. According to other public sources, each of Sonos five fundraising rounds were pitched to and lead by venture capital firms located in the Northern District—Seed round (Matrix Ventures, Cambridge/San Francisco) Series A round (Matrix Ventures, Cambridge/San Francisco), B round (Lightspeed Ventures, Menlo Park), C round (Menlo Ventures, Menlo Park), and D round (Bond Capital, San Francisco). Furthermore, this Court may exercise jurisdiction over Suno through the suit-related contacts with this state of Suno's agent, Bright Data, whose services were used to create the infringing copies, and as discussed herein, Bright Data has already been adjudicated to have sufficient contacts with California and the District for personal jurisdiction over it, as discussed below.

26. This Court has personal jurisdiction over Defendant Bright Data Ltd. and Bright Data, Inc. because Bright Data (collectively) has transacted business in this District, including selling its web-scraping tools, proxy-network services, and datasets to customers in California and throughout the United States, including AI developers in this District; because Bright Data has purposefully directed its commercial activities toward the forum; and because the exercise of personal jurisdiction over Bright Data comports with due process. Indeed, this Court has previously denied Bright Data Ltd.'s motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), finding, "Bright Data had sufficient contacts with California and the district." *X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832, 841 (N.D. Cal. 2024); *see also X Corp. v. Bright Data Ltd.*, No. C 23-03698 WHA, 2024 WL 422075, at *2 (N.D. Cal. Feb. 5, 2024) ("There is no question that Bright Data has sufficient contacts with California and this district such that these claims should proceed in this district court. Bright Data is hardly the non-resident defendant that specific personal jurisdiction aspires to insulate."). Bright Data, Inc. is also properly subject to this Court's jurisdiction given it maintains an office within the District and has engaged in suit-related conduct in the district.

27. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and/or 1400 because Defendant Suno maintains an office in this District to, among other things, manage the training of its AI Models and the data servers on which they operate, and uses data servers located in the District

through Oracle Cloud Infrastructure for that purpose – which includes hosting the illicit copies of Round Hill's Works on these servers. Furthermore, venue is proper in this District given Suno's contacts with the District through its agent, Bright Data, whose services it used to create the infringing copies, and given this Court has already found jurisdiction and venue proper in suits regarding similar conduct by Bright Data, as discussed herein.

28. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and/or 1400 because Defendant Bright Data maintains offices in the District, and its suit-related conduct occurred within the District. Indeed, as this Court previously noted, "Bright Data has directed potential customers interested in the data, tools, and services at issue to a sales office in downtown San Francisco as recently as October 2022; has located many members of its business development and sales team in the Bay Area, including its Chief Revenue Officer and Global Head of Presales; and has advertised and sold California IP address proxies that allow customers to '[o]vercome all blocks all of the time in California.'" *X Corp.*, 2024 WL 422075, at *2.

## IV. DIVISIONAL ASSIGNMENT

29. Pursuant to the Court's Assignment Plan (General Order No. 44), this action is an intellectual property action within the meaning of Local Rule 3-2(c) and therefore is not subject to intradistrict venue provisions.

## V. FACTUAL BACKGROUND

### A. Round Hill and Its Copyrights

30. Round Hill Music is a leading independent music company that, through its affiliated catalog entities, owns or exclusively controls copyrights in tens of thousands of musical compositions and master recordings spanning virtually every genre and era of popular music. Round Hill's catalogs include works by some of the most celebrated songwriters and recording artists in history, from classic rock and pop to country, R&B, and alternative.

31. Round Hill knows that great music starts with great songwriting and masterful lyricists and is committed to supporting and protecting the creative works its songwriters have entrusted to it. As a publisher, Round Hill regularly enters into licenses and other agreements for the works it owns, through which Round Hill compensates its songwriters for their share of earnings. Round Hill's

songwriters rely on the income received from these transactions to support their livelihood and art. This system of licensing, permissions, and authorized use is the backbone of the music publishing industry, and ensures that the songwriters and publishers who have invested their blood, sweat, tears, heartache, elation, and experience into their creative works receive compensation for the use of those works.

32. U.S. copyright law simply does not let technology platforms like Suno ride roughshod over these Constitutionally mandated protections of creative expression. Indeed, copyright owners necessarily have the right to police the use of their copyrighted works. "The owner of the copyright, if he pleases, may refrain from vending or licensing and content himself with simply exercising the right to exclude others from using his property." *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 997 (C.D. Cal. 2006) ("The right to exclude is inherent in the grant of a copyright; a copyright is not improperly expanded simply because the owner has exercised his or her power to exclude."). These are age-old, hornbook copyright principles. Defendants simply ignored them.

33. Round Hill, its songwriters, and its artists, rely on U.S. copyright law to protect their works from infringement. Without such protections, the music publishing industry would not function because songwriters and artists would be unable to profit from their work, and because publishers and record companies like Round Hill would lack the financial ability and incentive to invest in the careers and promote the works of their songwriters/artists.

34. Round Hill generates revenue from its catalog by licensing compositions for use in recordings, live performances, synchronization placements, mechanical reproductions, print, digital transmissions, and streaming. The value of these licensing activities depends entirely on Round Hill's ability to enforce its exclusive right to authorize—or decline to authorize—the reproduction, distribution, and public performance of its copyrighted works. Defendants' conduct directly undermines and dilutes that exclusivity.

35. One way Round Hill exploits its copyrights is to grant licenses for the display of the copyrighted lyrics of its works to aggregator websites. These licenses require the licensee provide the corresponding song title, songwriter(s), and other identifying information for the Works –

*i.e.* the CMI. The display of the CMI is essential for informing consumers about the authors of musical works, ensuring credit is given to creators, maintaining copyright protections, ***and*** to direct other putative licensees to Round Hill. Any removal or alteration of CMI by unlicensed parties violates these rights and harms the interests of Round Hill and its songwriters. It also violates the Copyright Act.

**B. Suno's Infringing Conduct**

36. Suno operates a subscription-based generative AI platform that generates new songs and audio recordings in response to user text prompts. Suno became widely available starting with version 3 on March 24, 2024, with the current version 5.5 launched in March 2026.

37. Suno's AI model was trained on a corpus of recorded music that, by Suno's own admission in separate litigation, encompasses substantially all available commercial recordings of adequate fidelity. In its answer to the complaint in *UMG Recordings, Inc. v. Suno, Inc.*, No. 1:24-cv-11611-FDS (D. Mass.), Suno stated that its "training data includes essentially all music files of reasonable quality that are accessible on the open Internet, abiding by paywalls, password protections, and the like."

38. Round Hill's Works are among the most widely distributed musical works on licensed streaming services. Given Suno's self-described training methodology—which involved harvesting effectively all available recordings—it is very likely that Round Hill's Works were copied into Suno's training sets. Round Hill's works are available on Spotify, Apple Music, YouTube, Amazon Music, SoundCloud, and Tidal, among others, all of which are duly licensed with Round Hill and require some form of account registration, subscription, or other access credential to use.

39. Upon information and belief, Suno obtained copies of Round Hill's copyrighted works by accessing these platforms through automated scraping tools that bypassed login requirements, subscription gates, and technical anti-bot defenses—in part through tools and proxy services supplied by Defendant Bright Data. Suno then ingested these unauthorized copies into its training pipeline, producing an AI model capable of generating audio that closely imitates the style, structure, and expressive character of the copyrighted recordings on which it was trained.

40. As discussed above, Suno's Founder and CEO, Mikey Shulman admitted that the

model faces "challenges in modeling music" and "[O]ur models are taught to just continue a piece of music."[14]

41. Suno never sought or obtained a license from Round Hill to reproduce, copy, or train on any composition or sound recording in Round Hill's catalog, much less for the Works. Suno's training-data practices constitute direct copyright infringement on a massive scale.

42. While Suno claims to have put in guard rails to prevent output that is similar to existing artists, these guardrails are easily circumvented. For example, while the platform will not permit a user to include "Reba McEntire" in the prompt, it will allow users to include the prompt "in the style of Reba McIntyre [sic]" in creating a female-vocal country song in McEntire's style. Indeed, third party applications like "HookGenius" are advertising services to get around these guardrails by providing users artist-specific prompts for Suno to generate entire albums based on the users' favorite artists.[15]

43. Suno's platform generates lyrics based on user prompts. When prompted to generate an entire song's lyrics from "I feel good because I've got you and I knew that I would" it generated the following lyrics for a chorus which are substantially similar to James Brown's "I Got You (I Feel Good)":

**Suno Generated Chorus:**

[Chorus]
I feel good
Because I've got you
I knew it would
I knew it would
I feel good
When you pull me through
I knew it would
I knew it would
(With you)

**Original Chorus:**

Wo! I feel good, I knew that I would now
I feel good, I knew that I would now
So good, so good, I got you
Wo! I feel nice, like sugar and spice
I feel nice, like sugar and spice
So nice, so nice, I got you

///

---

[14] "Suno Generates Beautiful Songs with Oracle Cloud". www.youtube.com/watch?v=aKlIQiS8MLc

[15] *See* https://hookgenius.app/learn/suno-eminem-style/ and https://hookgenius.app/pricing/

**C. Bright Data's Conduct**

44. Bright Data is a commercial vendor of web-scraping infrastructure whose business model is built on enabling customers to extract data from websites at scale—including websites that employ technical measures to prevent exactly that kind of bulk automated extraction. Bright Data's product suite includes residential and datacenter proxy networks that rotate IP addresses to evade rate limits and IP bans; a "Web Unlocker" service designed to defeat CAPTCHAs, JavaScript challenges, and bot-detection systems; and a "Scraping Browser" that renders pages in a browser environment without the headers and footers to circumvent client-side protections.

45. As discussed above, CMI regularly exists in the headers and footers. Making the deliberate choice to exclude headers and footers is identical to making the deliberate choice to remove CMI.

46. These products exist principally to defeat the access-control technologies that websites deploy to prevent unauthorized automated data extraction. Their commercial value lies precisely in their capacity to circumvent such controls. Bright Data markets these capabilities openly, advertising its ability to bypass anti-scraping defenses and deliver data from otherwise inaccessible sources.

47. Upon information and belief, Bright Data's tools and services were used—either by Bright Data itself on behalf of its customer, Suno—to extract Round Hill's copyrighted Works from licensed streaming and lyrics platforms. This extraction required circumventing the technological protection measures those platforms employ: authentication gates, subscription paywalls, rate limiting, CAPTCHA challenges, and robots.txt access restrictions, as well as removal of CMI.

48. Upon information and belief, Bright Data supplied the resulting scraped data—or the tools to generate it—to Suno with knowledge that the data consisted of copyrighted material and would be used to train commercial AI models without authorization from the copyright holders. Bright Data's awareness of this end use is inferred from the nature of its customer relationships with AI development companies, the public prominence of the AI training-data debate since at least 2023, and the widespread litigation over unauthorized AI training on copyrighted content.

49. Bright Data's role in Suno's unlawful copyright infringement was not publicly known until a data hack and public release showed that Suno used Bright Data's tools to scrape the internet

which was reported first by 404 Media on July 15, 2026.[16]

**D. Harm to Round Hill**

50. Defendants unlawful infringing conduct has caused and continues to harm Round Hill and the songwriters and artists it represents (and/or whose works it owns).

51. The Round Hill Works are world-famous pieces of music – the very kind of artistic expressions that the Copyright Act is designed to protect in fulfillment of the Constitutional mandate.

52. Without a single penny of remuneration – much less even a request for license – Defendants, massive, for-profit companies have engaged in rampant commercial copying, unauthorized access, removal of CMI. This has harmed Round Hill by, *inter alia*, devaluing its catalog, diverting compensation away from Round Hill, precluding licensing opportunities, and by divesting Round Hill's commercial control over these Works. In short, it infringes upon just about every one of Round Hill's exclusive rights as the copyright owner of the Works.

53. Meanwhile, Defendants have amassed massive fortunes by circumventing the protections afforded to Round Hill by the Copyright Act. Without the use of works such as those owned, controlled, or represented by Round Hill, defendant Suno would have no business.

54. Thus, while simultaneously holding themselves out to be "ethical" companies, Suno has been knowingly and intentionally committing willful copyright infringement from inception of its AI models, and Bright Data knowingly provided them tools to commit this infringing conduct.

**E. Fair Use Does Not Apply**

55. As this Court in *Bartz v. Anthropic PBC*, 787 F. Supp. 3d. 1007, 1030-34 (N.D. Cal. June 23, 2025) ("*Bartz I*") determined following discovery, the practice of indefinite retention in a general-purpose archive is legally distinct from the narrower act of purchasing and scanning works solely to train a specific model. Suno has engaged in the exact same conduct: the indefinite retention of unlicensed copies of copyrighted works, under *Bartz I*, does not constitute fair use. Building and maintaining a permanent stockpile of copyrighted material for open-ended future exploitation fails every factor of the fair-use analysis: the purpose is acquisitive rather than transformative; entire works

---

[16] https://www.404media.co/hack-reveals-suno-ai-music-generator-scraped-youtube-deezer-and-genius/

are retained without limitation; and the unauthorized copies function as market substitutes, displacing sales and licenses on a one-to-one basis. This Court did not mince words when it rejected any suggestion that the Copyright Act contains a technology-sector exception to these well-established principles. *Id.* at 1022 ("Anthropic [another AI company] seems to believe that because some of the works it copied were sometimes used in training LLMs,[17] Anthropic was entitled to take for free all the works in the world and keep them forever with no further accounting. **There is no carveout, however, from the Copyright Act for AI companies.**") (emphasis added).

56. While in other cases for copyright infringement, Defendants have waxed poetic about the necessity of progress and AI's value to society, there is simply no reason – other than rote expediency – to have that progress come at the cost of copyrights holders. Indeed, even if, accepting *arguendo*, the procedural hurdles for ensuring proper licensing for the size of data needed for an effective AI Model, there exists an entire universe of public domain and non-copyrighted materials to train the models. For example, literally every (formerly) copyrighted work under U.S. Copyright law written before 1931 (1926 for sound recordings) has now entered the public domain.

57. Furthermore, these "expediency" arguments completely falter when compared to the $5.4 billion valuation that the Suno has garnered exploiting illicit copies of copyrighted works, including the Round Hill Works. The Works were created over periods of dozens of years, and Suno, by its infringing conduct, is destroying the value of these works in a matter of a few years with only profit as its motive. And there are AI companies and collective rights organizations who actually seek permission and pay rights holders to create data sets for AI training. Such companies include ElevenLabs, Musical AI, Symphonic, Soundverse, GEMA (through PLAI), GCX/Rightsify, and Troveo. Not only does this further undercut any "expediency" arguments, but it also directly demonstrates the harm Round Hill faces to license with these forthright entities that license and pay for use of copyrighted music

58. And, of course, "Fair use presupposes good faith and fair dealing." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 540 (1985). Just as in *Harper & Row*, the copying

---

[17] An LLM, or "Large Language Model," is a type of artificial intelligence program trained on massive amounts of text to recognize, translate, summarize, and generate human-like language.

and permanent retention of the Round Hill Works (in addition to the millions of other copyrighted works) was not the "incidental effect but the *intended purpose*." *Id.* (emphasis kept). Worse, the illicit copying, removal of CMI, and permanent retention of these copyrighted works *for the purpose* of regurgitating infringing copies thereof or create songs to directly compete falls well outside of the enumerated fair use activities set forth in the Copyright Act, 17 U.S.C. § 107. There is simply nothing fair about a company using theft to build for purely commercial purposes a multi-billion dollar business while those from which they steal receive nothing.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION – DIRECT COPYRIGHT INFRINGEMENT

### (AGAINST SUNO)

59. Round Hill re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

60. Round Hill owns or exclusively controls valid, subsisting copyrights in the musical compositions identified in Exhibit A and in numerous additional works.

61. Suno, without authorization from Round Hill, reproduced Round Hill's copyrighted compositions by: (a) scraping or otherwise obtaining copies from licensed streaming platforms and other online sources, including through the use of circumvention tools and services provided by Bright Data; (b) assembling those copies into training datasets; (c) storing and reproducing those copies, including server copies in a permanent, all-purpose internal repository maintained for indefinite reproductions for future use; (d) unlawfully reproduced the musical compositions at issue here through the making of permanent server copies; and (e) processing those datasets through its model-training pipeline. Each such act independently violates Round Hill's exclusive rights under 17 U.S.C. §§ 106(1) and 106(2).

62. None of these acts qualifies as a fair use. As the *Bartz I* court held, the indefinite retention of copyrighted works in a general-purpose repository for uncommitted future exploitation is not transformative and fails every factor of the fair-use test. The same reasoning applies to Suno's and Bright Data's accumulation of copyrighted recordings for AI training at commercial scale without any license or compensating benefit to rights holders.

63. Defendant's infringement in these regards was willful. At all times relevant to this Complaint, Defendants had actual knowledge that they were making copies of Round Hill's Works without license or payment.

64. Suno, without authorization from Round Hill, has infringed and continues to infringe Round Hill's Works each time Suno's AI music generator reproduces, displays, performs, or prepares a derivative work based upon Round Hill's copyrighted Works. These infringing outputs include songs created in response to user prompts that are substantially similar, if not strikingly similar to, the Round Hill Works and unlicensed derivative works that incorporate, without a license, the original, copyrighted elements of the Round Hill Works.

65. Suno's leaked code shows that it deliberately endeavored it "stem splitting" *i.e.* breaking up sound recordings of musical compositions into separate tracks for vocals, drums, and the various instruments played. Further, Suno purportedly additionally deliberately sought out *a cappella* versions of the songs so that it could more faithfully create vocals based upon the infringed Works and further train its AI model on multiple iterations of the musical composition, especially with regard to the lyrics of the song so that its model could "create" (*i.e.* regurgitate infringing derivative works) lyrics based thereupon.

66. Each infringing output by Suno constitutes an independent violation of Round Hill's exclusive rights to reproduce (§ 106(1)), prepare derivative works (§ 106(2)), distribute copies (§ 106(3)), publicly perform (§ 106(4), and publicly display (§ 106(5) its copyrighted Works.

67. Suno's output-stage infringement is willful. While Suno advertises that it enacted safeguards to prevent copying of copyrighted elements, these safeguards are easily overcome.

68. Round Hill has been damaged by Defendant Suno's infringement and is entitled to recover actual damages and Defendant Suno's profits under 17 U.S.C. § 504(b), or in the alternative, statutory damages of up to $150,000 per work willfully infringed under 17 U.S.C. § 504(c). As noted, while Round Hill identifies preliminarily 500 bell-weather musical compositions as examples in keeping with the practice of the other cases in this Court, Plaintiffs plan to ultimately amend to list potentially ten thousand or more of their musical compositions and sound recordings, meaning that the total statutory damages sought in this case would ultimately exceed hundreds of millions of dollars

and potentially approach or conceivably exceed $1 billion.

## SECOND CAUSE OF ACTION – CONTRIBUTORY COPYRIGHT INFRINGEMENT

## (AGAINST DEFENDANT BRIGHT DATA)

69. Round Hill re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

70. Suno's unauthorized reproduction of Round Hill's copyrighted works for AI training, as alleged in Count I, constitutes direct infringement of Round Hill's copyrights.

71. Bright Data had knowledge—actual or constructive—of Suno's direct infringement. Bright Data knew or had reason to know that: (a) the recordings and lyrics it scraped from streaming platforms and lyrics sites were protected by copyright; (b) its extraction of those works was unauthorized; and (c) the resulting copies were being supplied to, or used by, Suno to train a commercial AI music generator without any license from the copyright owners. Bright Data's knowledge is inferable from the public notoriety of AI-training copyright disputes since at least 2023, including extensive media coverage and multiple filed lawsuits.

72. Bright Data materially contributed to Suno's infringement by: (a) providing the scraping tools and proxy infrastructure that enabled Suno to obtain unauthorized copies at the necessary scale; (b) directly scraping copyrighted works and assembling them into datasets supplied to Suno; and/or (c) offering circumvention services that defeated the access controls preventing Suno from copying the works on its own. Absent Bright Data's contribution, Suno could not have assembled its training corpus with comparable speed, breadth, or efficiency.

73. The standard for contributory liability in this Circuit is well established: a party that knows of another's infringement and materially contributes to it—or that has the ability to take straightforward steps to prevent continuing infringement yet fails to do so—is contributorily liable. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001)); *see also Concord Music Group, Inc. v. Anthropic PBC*, No. 24-cv-03811-EKL (N.D. Cal. Oct. 6, 2025) (denying motion to dismiss contributory infringement claim under this standard).

74. Bright Data's contributory infringement was willful.

75. Round Hill has been damaged by Bright Data's contributory infringement and is entitled to compensatory damages and Bright Data's profits under 17 U.S.C. § 504(b), or in the alternative, statutory damages of up to $150,000 per work willfully infringed under 17 U.S.C. § 504(c). There are 500 Works on Exhibit A, for a total of $75,000,000.

## THIRD CAUSE OF ACTION – CIRCUMVENTION OF PROTECTION MEASURES, 17 U.S.C. § 1201

## (AGAINST ALL DEFENDANTS)

76. Round Hill re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

77. Round Hill's copyrighted works are hosted on licensed streaming and lyrics platforms that deploy technological measures to control access to those works. These measures include, without limitation: user-authentication requirements (login credentials and session tokens); paid-subscription paywalls; CAPTCHA and bot-detection challenges; IP-based rate limiting; JavaScript rendering requirements; and Terms of Service and robots.txt directives restricting automated access. These measures effectively control access to Round Hill's copyrighted works within the meaning of 17 U.S.C. § 1201(a)(3)(B).

78. Bright Data violated 17 U.S.C. § 1201(a)(2) by manufacturing, offering, providing, and trafficking in technology, services, and devices—including its Web Unlocker, proxy networks, and scraping infrastructure—that are primarily designed to circumvent the technological protection measures described above, that have only limited commercially significant use apart from such circumvention, and that are marketed for use in circumventing such measures.

79. Bright Data further violated 17 U.S.C. § 1201(a)(1) by itself circumventing, or by directing the circumvention of, these access controls in the course of scraping Round Hill's copyrighted works from the platforms on which they are hosted.

80. Suno violated 17 U.S.C. § 1201(a)(1) by circumventing—directly or through the use of Bright Data's tools and services—technological measures that effectively controlled access to Round Hill's copyrighted works on licensed streaming and lyrics platforms, thereby obtaining unauthorized access to and copies of those works for use in training its AI model.

81. Defendants' violations of § 1201 were willful and conducted for commercial

advantage and financial gain.

82. Round Hill has been damaged by Defendants' violations and is entitled to remedies under 17 U.S.C. § 1203, including injunctive relief, actual damages or statutory damages of up to $2,500 per violation under § 1203(c)(3)(A), costs, and attorneys' fees.

**FOURTH CAUSE OF ACTION – REMOVAL OR ALTERATION OF CMI, 17 U.S.C. § 1202**

**(AGAINST ALL DEFENDANTS)**

83. Round Hill re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

84. Round Hill's copyrighted compositions, as displayed on licensed lyrics platforms and streaming services, bear copyright management information within the meaning of 17 U.S.C. § 1202(c), including: the title of the composition; the identity of the songwriter(s) and/or composer(s); the identity of the copyright owner and/or publisher (Round Hill or its affiliates); and other identifying data such as ISRC codes and copyright notices.

85. Defendants intentionally removed or altered CMI from Round Hill's copyrighted works during its data-cleaning pipeline, in violation of 17 U.S.C. § 1202(b)(1). Upon information and belief, Defendants' engineers selected a data-extraction methodology that aggressively stripped authorship and ownership metadata, choosing it over available alternatives that would have preserved that information. Defendants further distributed copies of Round Hill's works with CMI removed through Suno's outputs, in violation of 17 U.S.C. § 1202(b)(3).

86. Defendants knew, or had reasonable grounds to know, that its removal and omission of CMI would induce, enable, facilitate, or conceal infringement. Suno was aware that its AI models tend to memorize and reproduce training-data content. It follows that stripping CMI during training would ensure that Suno would not attribute its lyric outputs to their true authors—concealing Suno's own infringement and facilitating further infringement by users who receive copyrighted lyrics without any indication of their protected status. This satisfies the "double scienter" requirement established in *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 671, 673 (9th Cir. 2018); *see Concord Music Group, Inc. v. Anthropic PBC*, No. 5:24-cv-03811-EKL, 2025 WL 4808984 *5 (N.D. Cal. Oct. 6, 2025) (holding similar allegations sufficient at the pleading stage, citing *Kadrey v. Meta Platforms,*

*Inc.*, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025), and *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 173 (2d Cir. 2020)).

87. Bright Data intentionally removed or altered CMI from Round Hill's works during the scraping and data-assembly process, in violation of 17 U.S.C. § 1202(b)(1). Upon information and belief, Bright Data's extraction tools stripped or discarded the authorship and ownership metadata that accompanied Round Hill's lyrics and recordings on the source platforms. Bright Data further distributed copies of Round Hill's works with CMI removed by supplying scraped datasets to AI developers including Suno, in violation of 17 U.S.C. § 1202(b)(3). Bright Data knew or had reasonable grounds to know that distributing stripped-down copies of copyrighted works to AI training operations would facilitate large-scale infringement.

88. Defendants' violations of § 1202 were willful and conducted for commercial advantage.

89. Round Hill has been damaged by Defendants' violations and is entitled to remedies under 17 U.S.C. § 1203, including injunctive relief, actual damages or statutory damages of up to $25,000 per violation under § 1203(c)(3)(B), costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Round Hill Music respectfully requests that this Court enter judgment against Defendants and grant the following relief:

(a) A declaration that Defendants have infringed Round Hill's copyrights in violation of 17 U.S.C. §§ 106 and 501;

(b) A declaration that Defendants have violated 17 U.S.C. § 1201 by circumventing, and by trafficking in tools designed to circumvent, technological measures effectively controlling access to Round Hill's copyrighted works;

(c) A declaration that Defendants have violated 17 U.S.C. § 1202 by intentionally removing or altering copyright management information from Round Hill's works and distributing copies with such information removed, with knowledge or reasonable grounds to know that doing so would induce, enable, facilitate, or conceal infringement;

(d) A permanent injunction prohibiting Defendants, and their officers, agents, employees, successors, and assigns, from further infringing Round Hill's copyrights or engaging in any of the unlawful conduct alleged herein;

(e) An order directing Defendants to deliver for impoundment or destruction all unauthorized copies of Round Hill's copyrighted works in their possession, custody, or control—including copies retained in training datasets, internal repositories, model weights, and server infrastructure—pursuant to 17 U.S.C. § 503(b);

(f) An order requiring Defendants to provide a complete accounting of all training data, scraping activities, and datasets involving Round Hill's copyrighted works;

(g) An award of actual damages suffered by Round Hill and disgorgement of Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b); or, in the alternative, an award of statutory damages of up to $150,000 per work willfully infringed, pursuant to 17 U.S.C. § 504(c), which Round Hill believes will cumulatively be in the hundreds of millions of dollars and may ultimately approach or exceed $1 billion;

(h) An award of actual damages or statutory damages of up to $2,500 per violation of 17 U.S.C. § 1201 and up to $25,000 per violation of § 1202, pursuant to 17 U.S.C. § 1203(c);

(i) An award of Round Hill's reasonable attorneys' fees and costs of suit, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4)-(5);

(j) Pre-judgment and post-judgment interest at the maximum lawful rate; and

(k) Such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

Dated: August 17, 2026

/s/ Richard S. Busch

**ADAMS & REESE, LLP**
Richard S. Busch (SBN 319881)
Mark L. Block (SBN 115457)
Andrew H. "Drew" Davis (pro hac vice forthcoming)
David Niemierzycki (pro hac vice forthcoming)
1600 West End Blvd., Suite 1400
Nashville, TN 37203
Tel: (615) 259-1450
Fax: (615) 259-1470
*richard.busch@arlaw.com*
*mark.block@arlaw.com*
*drew.davis@arlaw.com*
*david.niemierzycki@arlaw.com*

**SKAGGS FAUCETTE LLP**
Jeffrey E. Faucette (SBN 193066)
Martin R. Glick (SBN 40187)
505 Montgomery Street, 11th Floor
San Francisco CA 94111
Tel: (415) 874-3181
Fax: (888) 980- 6547
*jeff@skaggsfaucette.com*
*marty@skaggsfaucette.com*

*Attorneys for Plaintiffs*

## FILER'S ATTESTATION

I, Richard S. Busch, am the ECF user whose identification and password are being used to file the foregoing document. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

/s/ Richard S. Busch